# In the United States Court of Federal Claims

No. 18-1055C

Filed Under Seal: December 6, 2018

Reissued: January 2, 2019[*]

NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| MES SIMULATION & TRAINING CORP. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Post-Award Bid Protest; Judgment upon the Administrative Record; RCFC 52.1; Best Value Determination; Injunctive Relief; Supplementing the Court Record. |
| THE UNITED STATES, | ) ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| RIPTIDE SOFTWARE, INC. | ) ) | |
| Defendant-Intervenor. | ) ) | |

*Jonathan D. Shaffer*, Counsel of Record, Mary Pat Buckenmeyer, Of Counsel, Todd M. Garland, Of Counsel, Smith Pachter McWhorter PLC, Tysons Corner, VA, for plaintiff.

*Andrew W. Lamb*, Trial Attorney, *Allison Kidd-Miller*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Kristine Kassekert*, Of Counsel, United States Marine Corps, Quantico, VA, for defendant.

*John M. Manfredonia*, Counsel of Record, Manfredonia Law Offices, LLC, Cresskill, NJ, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on December 6, 2018 (docket entry no. 36). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on December 27, 2018 (docket entry no. 38) proposing certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order, dated December 6, 2018, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([* * *]).

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>GRIGGSBY, Judge</u>

## I.    INTRODUCTION

Plaintiff, MES Simulation & Training Corp. ("MES"), brought this post-award bid protest action challenging the decision of the United States Marine Corps, Marine Corps Systems Command (the "Marine Corps") to award a contract for the Support Army Virtual Training ("SAVT") system issued by Program Manager Training Systems to Riptide Software, Inc. ("Riptide").  The parties have filed cross-motions for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot.  MES has also filed a motion to supplement the court record.  *See generally* Pl. Mot. to Supp.

For the reasons discussed below, the Court:  (1) **GRANTS** MES's motion to supplement the court record; (2) **DENIES** MES's motion for judgment upon the administrative record; (3) **GRANTS** the government's and Riptide's cross-motions for judgment upon the administrative record; and (4) **DISMISSES** the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this post-award bid protest matter, MES challenges the decision by the Marine Corps to award a contract for a SAVT system to provide training for Joint Tactical Air Controller Forward Air Controllers and Forward Observers in the employment of Supporting Arms and Close Air Support (the "SAVT Contract") to the defendant-intervenor in this matter, Riptide.  Compl. at ¶ 1.

Specifically, MES challenges the Marine Corps' evaluation process in connection with the award of the SAVT Contract to Riptide.  *See generally id.*  As relief, MES requests that the

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's complaint ("Compl."); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); plaintiff's memorandum in support of its motion for judgment upon the administrative record ("Pl. Mem."); and the government's and Riptide's respective cross-motions for judgment upon the administrative record ("Def. Mot." and "Def.-Int. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

Court:  (1) declare that the Marine Corps violated the material terms of the RFP by failing to award the SAVT Contract to MES; (2) grant permanent injunctive relief directing the Marine Corps to award the SAVT Contract to MES, or to re-evaluate MES's and Riptide's proposals; (3) alternatively, grant permanent injunctive relief directing the Marine Corps to conduct meaningful discussions with offerors and re-evaluate the proposals based on those discussions; and (4) award MES costs, including bid and proposal costs and reasonable attorney's fees.  *Id.* at Prayer for Relief.

As background, MES is a small business and technical services corporation located in Christmas, Florida.  Compl. at ¶ 14.  MES is the incumbent contractor for the Marine Corps' requested logistic services training simulator ("Task Order 1").  Compl. at ¶ 14; Def. Mot. at 2. MES is not the incumbent contractor for the requested simulator modifications for the SAVT system ("Task Order 2").  Compl. at ¶ 14; Def. Mot. at 2-3.

### 1. The RFP

On August 25, 2017, the Marine Corps issued Request for Proposal No. M6785417R7826 (the "RFP") seeking proposals for operating and monitoring the SAVT system. AR Tab 1 at 1.  The RFP sought proposals for an indefinite delivery/indefinite quantity ("IDIQ") contract with a base ordering period of 60 months.  *Id.* at 2.  Under the terms of the RFP, the SAVT Contract would be issued for an amount of up to $49 million, or until the basic ordering period ends, whichever comes first.  *Id.*  The RFP also involves a "100% Small Business set-aside."  *Id.*

The RFP contains two task orders.  *See generally id.*  Each task order has a Performance Work Statement ("PWS") outlining its respective requirements.  *Id.* at 63-115 (providing the PWS for Task Order 1); *see also id.* at 116-64 (providing the PWS for Task Order 2).

The Performance Work Statement for Task Order 1 provides that the contractor "shall provide all labor, materials, consumables, equipment, tools, repairs, tech data, test equipment, and transportation necessary to operate/maintain the training systems and equipment," as well as recurring projects such as janitorial support.  *Id.* at 98.  Task Order 1 also requires "daily operation and maintenance" and a period of performance that "will end 12 months after" Task Order 1 is awarded.  *Id.* at 98, 114.

Of particular relevance here, Task Order 2 requires that offerors provide hardware and software modifications to the SAVT system. *Id.* at 122; Def. Mot. at 6. Task Order 2's Performance Work Statement provides that "[t]he Period of Performance will end 18 months after Task Order 002 date of award." AR Tab 1 at 163; *see also id.* at 541 (providing a Comment Resolution Matrix which states that the period of performance for Task Order 2 is "18 mos.").

With regards to the evaluation of responsive proposals, the RFP provides that the Marine Corps will consider four evaluation factors: (1) Training Device Operators Approach; (2) Technical Approach; (3) Past Performance; and (4) Price. *Id.* at 56. The RFP further provides that the Marine Corps may award the SAVT Contract to an offeror other than the lowest priced offeror. *Id.* The RFP also provides that the Training Device Operators Approach Factor is more important than the Technical Approach Factor, and that the Technical Approach Factor is more important than the Past Performance Factor. *Id.* In addition, the RFP provides that the non-price evaluation factors, when combined, are significantly more important than price. *Id.*[2]

With regards to Factor 1, Training Device Operators Approach, the RFP provides that:

The Government will evaluate the Training Device Operators Approach for:

1. Roles and responsibilities proposed for Operators/Maintainers are comprehensive and will result in successful performance.
2. Knowledge, Skills, Education, and Work experience for Operators proposed demonstrate knowledge of the requirements.
3. Ability to successfully perform required services on day one of the contract.
4. Compensation Plan shall be evaluated for reflecting a clear understanding of work to be and capability of the proposed compensation structure to obtain and keep suitably qualified operators to meet mission objectives.

*Id.*

The RFP also provides that the Marine Corps' Technical Evaluation Team ("TET") must assign each offeror a rating for the Training Device Operators Approach Factor to determine how well the offeror's proposal meets or exceeds the RFP's requirements. *Id.* at 57. Specifically, the RFP provides that offerors may be assigned a rating of either "outstanding," "good," "acceptable," "marginal," or "unacceptable" under the Training Device Operators Approach

---

[2] The RFP also makes clear that "as non-price factors qualitative distinctions become closer, price increases in importance." AR Tab 1 at 56.

Factor.  *Id.* at 57-58.  A description of the relevant ratings for the Training Device Operators Approach Factor is set forth in the table below:

| Rating | Definition |
|---|---|
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements, and risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal has not demonstrated an adequate approach and understanding of the requirements, and/or risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable.  Proposal is unawardable. |

*Id.* at 57-58.  The RFP also provides that a rating of "marginal" or "unacceptable" would render the proposal "unacceptable for award."  *Id.* at 56.  In addition, the RFP requires that, after the TET rates each offeror for the Training Device Operators Approach Factor, the TET must assign a risk factor to each offer.  *See generally* AR Tab 16.  In this regard, the RFP provides that the Marine Corps may assign a "deficiency," "weakness," "significant weakness," "strength," or "significant strength" to any given element of an offerors' proposal.  AR Tab 1 at 58.[3]

With regards to technical approach, the RFP provides the following guidance regarding the evaluation of the Technical Approach Factor:

> The Government will evaluate the Offeror's Staffing Plan for Task Orders 0001 and 0002 PWS's to determine the extent to which the Offeror's proposal demonstrates:
>
> - [W]hether the proposed labor categories are appropriate to perform the PWS,
> - [W]hether the proposed combination of hours and labor categories logically aligns to the PWS requirements, and

---

[3] The RFP defines each of these ratings as follows:

Deficiency: a material failure of a proposal to meet a Government requirement.  Weakness: a flaw in the proposal that increases the risk of unsuccessful contract performance.  Significant Weakness: a flaw that appreciably increases the risk of unsuccessful contract performance.  Strength: An aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance.  Significant Strength: An aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will appreciably be advantageous to the Government during contract performance.  AR Tab 1 at 58.  The RFP also clarifies that the ratings act as guidelines to help the agency make its final determination and that even if proposals receive the same rating, there may be qualitative distinctions between them.  AR Tab 1 at 57.

- Whether the proposed labor mix and hours are likely to result in successful performance of the PWS requirements.

*Id.* at 57.

With regards to the evaluation of responsive proposals under the Past Performance Factor, the RFP provides that the Marine Corps must establish a Performance Confidence Assessment Rating that will be based upon the offeror's recent and relevant past and present performance. *Id.* at 58. In this regard, the RFP provides that the Marine Corps' Past Performance Evaluation Team ("PPET") may assign a rating of either "substantial confidence," "satisfactory confidence," "neutral confidence," "limited confidence," or "no confidence" for the Past Performance Factor. *Id.* at 60. The RFP also provides that, in rating this factor, the Marine Corps must consider the relevancy and quality of past performance to make a determination. *Id.* at 59-60.

Lastly, with regards to Price, the RFP provides that the total evaluated price is calculated based upon the sum of the proposed price for Task Order 1 and the proposed price for Task Order 2. *Id.* at 61. The RFP also provides that the total evaluated price provides a "meaningful basis for comparison of prices" between offerors. *Id.*

### 2.   Evaluation Of The Proposals Submitted By MES And Riptide

On October 12, 2017, the Marine Corps received responsive proposals from six offerors—MES; Riptide; [* * *]. AR Tab 18 at 1299; Def. Mot. at 11. The Marine Corps' TET and PPET conducted an evaluation of each offerors' proposals based upon the three non-price evaluation factors under the RFP and the agency assigned each proposal a rating. AR Tab 16 1155-295; AR Tab 18 at 1298-99. Thereafter, the TET issued a report that included each proposal's respective rating, as well as an explanation to support the rating. AR Tab 16 at 1155-295; AR Tab 18 at 1299-311.

Specifically relevant to this case, the Marine Corps' TET and PPET rated the proposals submitted by MES and Riptide as follows:

|  | **MES's Proposal** | **Riptide's Proposal** |
|---|---|---|
| Factor 1. Training Device Operators Approach | Acceptable—Low Risk | Acceptable—Low Risk |

| Factor 2.  Technical Approach | Acceptable—Moderate Risk | Acceptable—Low Risk |
| Factor 3.  Past Performance | Substantial Confidence | Substantial Confidence |

AR Tab 16 at 1178, 1225.

### i.    Evaluation Of The Training Device Operators Approach Factor

With regards to MES's proposal, the TET assigned two weaknesses and one strength under the Training Device Operators Approach Factor.  AR Tab 16 at 1178.  But, the TET determined that the identified weaknesses in MES's proposal were low risk, and that "[one weakness] likely could be resolved at the Post Award Conference and documented in the meeting minutes."  *Id.* at 1179.

With regards to Riptide's proposal, the Marine Corps' TET assigned one weakness and one strength for the Training Device Operators Approach Factor.  *Id.* at 1225.  The administrative record shows that the TET assigned the weakness:

> [B]ecause Riptide's proposal assigns [* * *].  It is clear from the proposal that Riptide can successfully hire employees independently . . . .

*Id.* at 1225.  In addition, the TET assigned the proposals submitted by MES and Riptide a strength each "in the area of Knowledge, Skills, Education, and Work experiences for proposing Operators" under the Training Device Operators Approach Factor.  *Id.* at 1179, 1226.

### ii.    Evaluation Of The Technical Approach Factor

With regards to the Technical Approach Factor, the TET evaluated MES's proposal as "acceptable," but with a moderate risk.  AR Tab 16 at 1178.  In this regard, the Marine Corps assigned MES's proposal three weaknesses, one medium risk, two low risk, and one strength.  *Id.* at 1187, 1196-98.  The administrative record shows that the weakness assigned to MES's proposal centered on "[* * *]," and specifically, the "[* * *]."  *Id.* at 1196.  In this regard, the TET noted:

> These three Weaknesses, when considered together, present a MEDIUM Risk to the Government, and, as a result, the TET assesses them together as a Weakness because [* * *].

*Id.* The TET also assigned one strength for MES's "[* * *]" proposal and the TET found the proposal to be advantageous to the government. *Id.* at 1197-98. And so, the TET determined that, "[b]ased on the associate technical approach, the labor categories proposed by MES [in its proposal] reflect the expected competencies and skill required to successfully perform the requirements of TO 002 PWS." *Id.* at 1195.

With regards to the evaluation of Riptide's proposal under the Technical Approach Factor, the TET assigned one weakness, which was low risk, and no strengths. *Id.* at 1233. In this regard, the administrative record shows that the TET assigned the weakness because "[t]he proposed hours and distribution of the hours is insufficient to successfully perform the logistics related tasks." *Id.* The administrative record also shows that Riptide's proposal included labor hours for [* * *], with the hours allocated in specific labor categories for the first [* * *] of performance. AR Tab 13 at 945-49. Although the TET assigned a weakness to Riptide's proposal, the TET assessed this weakness to be a "low risk," because "Riptide does propose various labor categories which may have the requisite skills to provide the [* * *]. . . ." AR Tab 16 at 1242. And so, the TET ultimately determined that the "*proposed labor mix and hours are likely to result in successful performance of the PWS requirements*" for Task Order 2. *Id.* at 1242 (emphasis original).

The TET also addressed why it did not award Riptide's proposal a strength for proposing an accelerated performance schedule under the Technical Approach Factor. *Id.* at 1242. In this regard, the TET found that:

> Additionally, it appears that Riptide is proposing to perform certain work faster than the expected 18-month period of performance, which, if true, might be considered beneficial to the Government. However, other than date references in Riptide's proposal (in Riptide's TO 0002 Summary, Riptide provides a breakout for [* * *], and provides the notation [* * *]), Riptide does not describe an approach that would achieve those results. So, for example, the TET did not identify a section of the proposal that described how Riptide would concurrently perform tasks. Because Riptide does not explicitly propose to complete Task Order 0002 tasks in an [* * *], nor is this explained elsewhere in Riptide Volume II, Section 1 or Section 2 proposal, this leaves the TET with an ambiguity that should be clarified, if applicable, at a Post Award Conference.

*Id.* at 1242.

8

### iii.    Evaluation Of The Past Performance Factor

With regards to the Marine Corps' evaluation of the proposals submitted by MES and Riptide under the Past Performance Factor, the Marine Corps' PPET determined that there was a "high expectation that [both MES and Riptide] will successfully perform the requirements of the RFP." AR Tab 16 at 1199, 1244. In this regard, the PPET found that MES has successfully performed as the incumbent for the SAVT Contract and successfully performed other contracts of similar scope, magnitude, and complexity. *Id.* at 1199. The PPET also determined that Riptide has "proven successes . . . in the area of training simulator and training systems." *Id.* at 1243. And so, the PPET evaluated these offerors' proposals equally under the Past Performance Factor. *Id.* at 1154, 1199, 1243-44.

### iv.    Evaluation Of Price

Lastly, with respect to the Price Factor, the administrative record shows that MES proposed a total evaluated price of $3,191,228 and that Riptide proposed a lower total evaluated price of $2,818,414. AR Tab 18 at 1299. And so, the Marine Corps determined that Riptide's total evaluated price was the lowest of all acceptable proposals. *Id.*

### 3.    Best Value Determination And Award To Riptide

After conducting an evaluation of all responsive proposals, the Marine Corps' Source Selection Authority ("SSA") performed a best value determination and determined that "Riptide provide[d] the best overall value to the Government."[4] AR Tab 18 at 1299. On March 23, 2018, the SSA issued a Source Selection Decision Memorandum ("SSA Memo") explaining the agency's decision to award the SAVT Contract to Riptide. *See generally id.* In the SSA Memo, the SSA determined that "while Riptide's proposal does not offer any strengths [for the Technical Approach Factor]," the proposal does provide the "lowest risk of unsuccessful performance" to the Marine Corps. *Id.* at 1305. The SSA Memo also states that, "Riptide is assessed as more advantageous than MES" under the Technical Approach Factor, even though MES and Riptide received the same rating for this factor, because "the risk that MES would be

---

[4] The RFP provides that: "[a]ward will be made to the proposal that results in the best value to the Government as defined in [Federal Acquisition Regulation] 2.101 on the basis of a tradeoff between technical merit, past performance, compensation plan, and price." AR Tab 1 at 56.

unable to successfully perform the [* * *] is an unnecessary risk in comparison to Riptide's proposal." *Id.*

In addition, the SSA determined that "not only is Riptide the most highly rated proposal amongst all Offers for non-price Factors, it also provides the lowest [total] evaluated [price]." *Id.* at 1310.  In this regard, the SSA determined that "Riptide provided a slightly superior and more advantageous Factor 1 Training Device Operators Approach . . . as a result of their having proposed [* * *]. . . . [and that] Riptide distinguished themselves as slightly more advantageous to the Government than MES [for the Technical Approach Factor]." *Id.* at 1309.  The SSA also determined that "[t]here were no qualitative distinctions between the Past Performance of . . . MES and Riptide." *Id.* at 1309.  And so, the SSA concluded that "the Best Value to the Government is straightforward as the Government does not pay more for less advantageous non-price proposals" and the SSA recommended that the Marine Corps award the SAVT Contract to Riptide. *Id.* at 1298-99, 1310.

### 4.   The Small Business Administration And GAO Protests

Following the award of the SAVT Contract to Riptide, MES filed a size protest with the Small Business Administration ("SBA") on March 30, 2018.  AR Tab 29 at 1561.  In that protest, MES alleged that "Riptide has no applicable relevant expertise to do this work and they are totally dependent" upon a third party. *Id.*  MES also alleged that Riptide did not qualify as a small business. *Id.*; Def. Mot. at 17.  On April 26, 2018, the SBA denied MES's size protest. AR Tab 29 at 1571.

On April 2, 2018, MES initiated a protest before the United States Government Accountability Office ("GAO") regarding the award of the SAVT Contract to Riptide. *See generally* AR Tab 24.  On May 14, 2018, MES filed a supplemental GAO protest alleging, among other things, that Riptide violated the RFP's requirements by proposing a period of performance for Task Order 2 of [* * *] identified in the Performance Work Statement for Task Order 2.  AR Tab 32 at 2849; Def. Mot. at 18.  On July 10, 2018, the GAO denied MES's protest.  AR Tab 39 at 2960-71; MES Simulation & Training Corp., B-416210, B-416210.2, 2018 WL 3641320 (Comp. Gen. July 10, 2018).

**B.      Procedural History**

On July 18, 2018, MES filed the complaint in this bid protest matter.  *See generally* Compl.  On July 19, 2018, Riptide filed an unopposed motion to intervene, which the Court granted on July 23, 2018.  *See generally* Mot. to Intervene; Order, dated July 23, 2018.  On July 23, 2018, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On August 14, 2018, the government filed the administrative record.  *See generally* AR.  On August 15, 2018, MES filed a motion to supplement the court record.  *See generally* Pl. Mot. to Supp.  On August 21, 2018, MES filed a motion for judgment upon the administrative record and memorandum in support of its motion for judgment upon the administrative record.  *See generally* Pl. Mot.; Pl. Mem.  On August 22, 2018, the government filed a response and opposition to MES's motion to supplement the court record.  *See generally* Def. Opp.  On August 24, 2018, MES filed a reply in support of its motion to supplement the court record.  *See generally* Pl. Reply to Mot. to Supp.

On September 4, 2018, the government and Riptide filed their respective cross-motions for judgment upon the administrative record and responses and oppositions to MES's motion for judgment upon the administrative record.  *See generally* Def. Mot.; Def.-Int. Mot.

On September 13, 2018, MES filed a response and opposition to the government's and Riptide's respective cross-motions for judgment upon the administrative record and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On September 21, 2018, the government and Riptide filed their respective reply briefs in support of their cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; Def.-Int. Reply.[5]

These matters having been fully briefed, the Court resolves the pending motions.

---

[5] In its motion for judgment upon the administrative record, MES requests that the Court hold oral argument on the parties' cross-motions.  Pl. Mot. at 2.  A careful review of the administrative record and the parties' briefs demonstrates that oral argument is not warranted to resolve MES's claims.  And so, the Court resolves the pending motions based upon the parties' filings and the administrative record.  *See* RCFC 1; RCFC 52.1.

### III.    LEGAL STANDARDS

#### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the Administrative Procedure Act standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "'[t]he protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'"  *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

## B.    Best Value Determinations

This Court affords contracting officers a great deal of discretion in making contract award decisions, particularly when the contract is to be awarded to the offeror that will provide the best value to the government. *See TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958-59 (Fed. Cir. 1993); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004). The Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Center, Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). And so, a decision to award a contract is least vulnerable to challenge when that decision is based upon a best value determination. *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

## C.    Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence."). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242

(2011) (citations omitted); RCFC 56.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### D.    Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, while success upon the merits is necessary, it is not sufficient alone for a

14

plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV.    LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record pursuant to RCFC 52.1 on the issues of whether the Marine Corps properly evaluated Riptide's proposal under the terms of the RFP and whether the Marine Corps conducted a reasonable best value analysis. *See generally* Pl. Mem.; Def. Mot; Def.-Int. Mot.  MES has also filed a motion to supplement the court record. *See* Pl. Mot. to Supp.

MES argues in its memorandum in support of its motion for judgment upon the administrative record that the Marine Corps did not conduct a reasonable evaluation of proposals with respect to the award of the SAVT Contract because:  (1) the administrative record does not meet the standards of the Administrative Procedure Act ("APA") for documentation of the Marine Corps' award decision; (2) the Marine Corps failed to properly evaluate Riptide's proposal under the RFP's requirements; and (3) the Marine Corps failed to perform a reasonable and proper trade-off analysis and best value determination. *See* Pl. Mem. at 13-30.  MES also requests that the Court supplement the court record with the declaration of its President, Naren Shahani. *See generally* Pl. Mot. to Supp.

In their cross-motions for judgment upon the administrative record, the government and Riptide counter that the Marine Corps' decision to award the SAVT Contract to Riptide was reasonable and in accordance with the terms of the RFP and applicable law.  And so, the government and Riptide request that the Court sustain the Marine Corps' award decision. *See* Def. Mot. at 23-35; Def.-Int. Mot. at 9-23.

For the reasons discussed below, the Court may consider the Declaration of Naren Shahani because the declaration addresses the factors that the Court weighs in awarding injunctive relief.  In addition, the record evidence makes clear that the Marine Corps' evaluation of proposals in connection with the award of the SAVT Contract to Riptide was reasonable and consistent with the requirements of the RFP.  And so, the Court:  (1) **GRANTS** MES's motion to supplement the court record; (2) **DENIES** MES's motion for judgment upon the administrative

record; (3) **GRANTS** the government's and Riptide's cross-motions for judgment upon the administrative record; (4) **DISMISSES** the complaint.

### A.    The Court Grants MES's Motion To Supplement The Court Record

As a preliminary matter, the Court grants MES's motion to supplement the court record with the declaration of Naren Shahani.  In its motion to supplement the court record, MES requests that the Court include the declaration of its President, Naren Shahani, in the court record for this matter to support its request for injunctive relief.  Pl. Mot. to Supp. at 1.  As MES correctly observes in its motion to supplement the court record, this Court recognizes a distinction between the court record and the administrative record in bid protest matters.  Pl. Mot. to Supp. at 5.  Generally, the court record includes evidence that may not necessarily be in the administrative record, such as evidence regarding harm to a plaintiff or to the government, or other evidence pertaining to the injunctive relief factors.  *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366-67 (2009) ("In general, it is appropriate to add evidence pertaining to prejudice and the factors governing injunctive relief to the record in a bid protest—not as a supplement to the AR, but as part of this Court's record.").

In this case, a careful reading of the Shahani Declaration shows that the declaration addresses MES's request for injunctive relief and the injunctive relief factors that the Court should consider.  Given this, the Court **GRANTS** MES's motion to supplement the court record with the declaration of Naren Shahani.

### B.    The Administrative Record Satisfies The APA Standard For Documentation

Turning to the substance of MES's claims, the Court must reject MES's claim that the administrative record in this matter is insufficient, because it contains no explanation regarding the Marine Corps' evaluation of, and decision not to exclude, Riptide's proposal due to the accelerated performance schedule in the proposal.  Pl. Mem. at 13-16.  It is well-established that an administrative record is sufficiently clear if "the agency's path forward may reasonably be discerned."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).  And so, in this case, the administrative record must contain supporting documentation to explain the ratings that the Marine Corps assigned to Riptide's proposal in connection with the evaluation process for the SAVT Contract.  *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 370 (2009); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985).

A careful review of the administrative record shows that the record evidence in this case satisfies the aforementioned standard for documentation.  Specifically, the administrative record contains detailed reports from the Marines Corps' TET and PPET regarding the agency's review of responsive proposals.  *See generally* AR Tab 16.  These reports describe the evaluation factors under the RFP and the basis for the ratings assigned by the Marine Corps to each responsive proposal—including Riptide's proposal—during the agency's evaluation process.  *Id.*

The administrative record also shows that the Marine Corps carefully evaluated Riptide's accelerated schedule for performing the SAVT Contract.  In this regard, the record evidence shows that the TET's report determined that:

> Riptide proposes a labor category of [* * *].  The proposed hours and distribution of the hours is insufficient to successfully perform the logistics related tasks.

AR Tab 16 at 1233.  The administrative record also shows that the Marine Corps' TET assessed Riptide's proposed labor mix and hours as "a low risk" to the government.  *Id.* at 1233, 1240.  Specifically, the administrative record further shows that:

> [T]he TET has reviewed the labor mix and hours in Riptide's proposal and determined that there is risk of unsuccessful performance resulting from the misalignment of labor mix and hours.  This presents a LOW Risk to the Government as the development and delivery of the required Contract Deliverable Reports (CDRLs) may be delayed, which may result in non-fulfillment of entry criteria for CPR and ultimately, and delay the delivery schedule for the SAVT modifications.

AR Tab 16 at 1242.  And so, the record evidence shows that the Marine Corps ultimately determined that the "*proposed labor mix and hours are likely to result in successful performance of the PWS requirements*."  *Id.* (emphasis original).[6]  Given this evidence in the administrative

---

[6] The TET also determined that:

> [I]t appears that Riptide is proposing to perform certain work faster than the [* * *] period of performance, which, if true, might be considered beneficial to the Government. However, other than date references in Riptide's proposal (in Riptide's TO 0002 Summary, Riptide provides a breakout for [* * *]), Riptide does not describe an approach that would achieve those results.  So, for example, the TET did not identify a section of the proposal that described how Riptide would concurrently perform tasks.  Because Riptide does not explicitly propose to complete Task Order 0002 tasks in an [* * *], nor is this explained elsewhere in Riptide Volume II, Section 1 or Section 2 proposal, this leaves the TET with

record, MES has not shown that the administrative record is insufficient with respect to the Marine Corps' evaluation of Riptide's proposed accelerated schedule for performance. *State Farm Mut. Auto Ins. Co.*, 463 U.S. at 43.

### C.     The Marine Corps Reasonably Evaluated Riptide's Proposal

MES's objections to the Marine Corps' evaluation of Riptide's proposal with regards to the Technical Approach Factor are also unsubstantiated by the record evidence. In this regard, MES challenges the Marine Corps' decision to award the SAVT Contract to Riptide because, Riptide did not propose using the entire 18 months of performance for Task Order 2 and Riptide did not explain its proposed accelerated schedule. *See* Pl. Mem. at 16, 20. MES also argues that the Marine Corps treated other offerors who proposed an accelerated schedule differently than Riptide. *See* Pl. Mem. at 25. For the reasons discussed below, MES's claims lack evidentiary support.

### 1.   The RFP Does Not Require That
### Offerors Use All 18-Months For Performance

First, the record evidence in this matter does not support MES's claim that the RFP requires that offerors propose a schedule that utilizes the entire 18-month period of performance for the SAVT Contract. AR Tab 1 at 163, 536, 541. In this regard, it is undisputed in this matter that the RFP provides that: "The Period of Performance [of the SAVT Contract] will end 18 months after Task Order 002 date of award." *Id.* at 163. While this language clearly establishes an 18-month period to complete performance, the language in the RFP does not expressly require that offerors use the entire 18 months of performance to satisfy the RFP's requirements. *Id.* at 163. In fact, as the government correctly argues in its cross-motion for judgment upon the administrative record, the 18 month period of performance under the terms of the RFP represents an end date for completing performance of the SAVT Contract. *See* Def. Mot. at 29. And so, the Court reads the RFP to provide that the offerors have up to 18 months to complete performance of the SAVT Contract and that a shorter period of performance would not run afoul of the terms of the RFP.

---

an ambiguity that should be clarified, if applicable, at a Post Award Conference. AR Tab 16 at 1242.

The Court's reading of the RFP is reinforced by the questions and answers exchanged between Riptide and the Marine Corps during the solicitation process. Specifically, the record evidence shows that Riptide submitted a request for clarification regarding the performance period for the RFP stating that: "[i]t is unclear if [the performance period is] supposed to be for the duration of the 4 modification activities only or for the full 5 year [period of performance]." AR Tab 1 at 536. The Marine Corps responded to Riptide's question by stating that the performance period for the SAVT Contract is "the duration of the modifications" for Task Order 2. *Id.*; AR Tab 2 at 592. As the government persuasively argues, the period of time required to complete the modifications required under Task Order 2 could be less than 18 months. Def. Mot. at 29. And so, the Marine Corps' answer that the performance period for the SAVT Contract corresponds to the time needed to complete the required modifications shows that there is no requirement in the RFP that offerors use the entire 18-month period to complete performance of the SAVT system modifications.[7]

### 2. The Marine Corps Reasonably Evaluated Riptide's Proposal Under The Technical Approach Factor

Because the Court does not read the RFP to require that Riptide and other offerors perform during all 18 months of the performance period for the SAVT Contract, MES's claim that the Marine Corps erred by failing to assign a material deficiency under the Technical Approach Factor to Riptide's proposal due to Riptide's proposed accelerated schedule is similarly unsubstantiated by the record evidence. Pl. Mem. at 17-18. As discussed above, the RFP and the Marine Corps' responses to questions during the procurement process make clear that the performance period for the SAVT Contract is a period of up to 18 months. AR Tab 1 at 163. Because there is no requirement in the RFP that offerors use the entire 18-month period to complete performance, MES has not shown that the Marine Corps erred in evaluating Riptide's proposal under the Technical Approach Factor.

---

[7] This reading of the RFP is also supported by evidence in the administrative record regarding the schedule that various offerors proposed. *See generally* AR Tab 16. Four offerors, including Riptide, proposed either [* * *] or [* * *] month periods of performance. *See* AR Tab 16 at 1217, 1241, 1265-66, 1290-91.

### 3.   Riptide Had No Obligation To Explain Its Proposed Schedule

For these same reasons, MES's claim that Riptide was required to explain its proposed accelerated schedule for performing the SAVT Contract is also without merit.  The administrative record makes clear that Riptide and other offerors had no obligation to explain the schedules in their proposals.  In this regard, the RFP provides that:

> The Offeror shall complete a staffing plan for Task Orders 0001 and 0002 in spreadsheet format . . . . The spreadsheet shall include . . . . [t]he number of hours to be performed for each labor category for the Offeror . . . allocated per month across a calendar year.

AR Tab 1 at 47-48.  And so, the RFP requires only that offerors provide a staffing plan and the number of hours to be performed for each labor category contemplated by the RFP with respect to the performance schedule.  *Id*.  Given this, MES's claim that Riptide had an obligation to explain its proposed accelerated schedule is refuted by the plain terms of the RFP.

MES's claim is also called into doubt by the evaluation criteria for the Technical Approach Factor under the RFP.  The RFP provides that the Marine Corps would evaluate the Technical Approach Factor based upon the following criteria:

- [W]hether the proposed labor categories are appropriate to perform the PWS,
- [W]hether the proposed combination of hours and labor categories logically aligns to the PWS requirements, and
- Whether the proposed labor mix and hours are likely to result in successful performance of the PWS requirements.

*Id.* at 57.  Notably, none of these evaluation criteria require an explanation of the length of the proposed schedule of performance.

In addition, the administrative record shows that the Marine Corps appropriately evaluated Riptide's proposal based upon the aforementioned evaluation criteria for the Technical Approach Factor.  Specifically, the record evidence shows that the Marine Corps' TET carefully reviewed Riptide's proposed labor categories and hours and determined that Riptide's proposal was "Acceptable - LOW Risk" under the Technical Approach Factor.  AR Tab 16 at 1225, 1240-42.  The administrative record also shows that, in evaluating Riptide's proposed labor categories, the TET found that:

> Based on the associated technical approach, the labor categories proposed by Riptide reflect the expected competencies and skill sets required to successfully perform the requirements of TO 0002 PWS.

*Id.* at 1241.  Similarly, in its evaluation of Riptide's proposed combination of hours and labor categories, the Marine Corps' TET determined that:

> Based on the allocation of the hours assigned to each labor category per month, and the associated technical approach, the hours and labor categories are not logically aligned and commensurate to the PWS requirements. . . . However, Riptide does propose various labor categories which may have the requisite skills to provide the [* * *] who likely would be able to prepare the required Contract Deliverable Reports.

*Id.* at 1241-42.

A careful review of the administrative record also shows that the Marine Corps also considered the impact of Riptide's proposed accelerated schedule on successful performance. The TET determined that:

> [I]t appears that Riptide is proposing to perform certain work faster than the expected 18-month period of performance, which, if true, might be considered beneficial to the Government.  However, other than date references in Riptide's proposal (in Riptide's TO 0002 Summary, Riptide provides a breakout [* * *]), Riptide does not describe an approach that would achieve those results.  So, for example, the TET did not identify a section of the proposal that described how Riptide would concurrently perform tasks.  Because Riptide does not explicitly propose to complete Task Order 0002 tasks in [* * *] month period, nor is this explained elsewhere in Riptide Volume II, Section 1 or Section 2 proposal, this leaves the TET with an ambiguity that should be clarified, if applicable, at a Post Award Conference.

*Id.* at 1242.  And so, the TET report and other evidence in the administrative record makes clear that the Marine Corps reasonably evaluated Riptide's proposal, based upon the evaluation criteria for the Technical Approach Factor, as required under the RFP.

### 4.  MES's Unequal Treatment Claim Is Unsubstantiated

MES's claim that the Marine Corps treated certain offerors unequally with respect to their proposed schedules for performing the SAVT Contract is similarly unsubstantiated by the record evidence.  Pl. Mem. at 25-27.  In this regard, MES argues that the Marine Corps engaged in unequal treatment of offerors because the agency assigned a deficiency under the Technical Approach Factor to the proposals submitted by two other offerors that proposed schedules for

completing performance of the SAVT Contract in less than 18 months—[* * *]. *Id.* But, a careful review of the administrative record shows that the Marine Corps did not assign a deficiency to these proposals because of the accelerated schedules put forward by these offerors.

Rather, the record evidence makes clear that the Marine Corps' TET assigned a deficiency to [* * *] proposal because it concluded that [* * *] "[did] not provide sufficient labor categories or labor hours to successfully perform" and that the government "was unable to understand the proposal." AR Tab 16 at 1283. The administrative record also shows that the Marine Corps' TET assigned a deficiency to [* * *] proposal because the agency found that "[* * *] proposal does not demonstrate an understanding of the RFP requirements." *Id.* at 1256. Given this evidence, the administrative record simply does not support MES's claim that the Marine Corps failed to treat [* * *] equally to Riptide with respect to the evaluation of the schedules proposed by these offerors.

### 5. MES Has Not Shown That The Marine Corps Awarded The SAVT Contract To Riptide With The Intent To Modify

MES's claim that the Marine Corps awarded the SAVT Contract to Riptide with the intent to later modify Riptide's proposal also lacks support in the administrative record. Pl. Resp. at 21. MES argues in its memorandum in support of its motion for judgment upon the administrative record that the Marine Corps' determination that "Riptide's proposal has an ambiguity that should be clarified, if applicable, at a Post Award Conference" should be interpreted to mean that Riptide would be permitted to make changes to its proposal after the award of the SAVT Contract. *Id.*; AR Tab 16 at 1242.

MES's claim is belied by the plain terms of the RFP. Indeed, a review of the administrative record shows that the RFP expressly allows for the post-award conference referenced in the Marine Corps' statement. Specifically, the RFP provides that "[w]ithin 30 days of the start of performance, the awardee shall organize a Post Award Conference to be attended by the Contracting Officer, [Contracting Officer's Representative] and contractor personnel to reconcile performance requirements . . . ." AR Tab 1 at 11. And so, the Marine Corps' decision to address the noted ambiguity in Riptide's proposal during a post award conference is consistent with the terms of the RFP. *Id.*

**D.      The Government Conducted A Reasonable Best Value Determination**

The Court is also unpersuaded by MES's argument that the Marine Corps conducted an irrational best value determination during the evaluation process for the SAVT Contract.  As discussed above, the record evidence shows that the Marine Corps reasonably and equally evaluated all responsive proposals for the SAVT Contract pursuant to the terms of the RFP, and that the agency ultimately determined that Riptide's proposal offered the best value to the government.  *See generally* AR Tab 18.  The Marine Corps' best value determination is well-supported by the administrative record.

In this regard, the agency's best value determination is described in detail in the SSA Memo, the TET report and the PPET report developed during the evaluation process for the SAVT Contract.  *See generally id.*; AR Tab 16.  Specifically, the record evidence shows that the Marine Corps conducted its best value determination by comparing the proposals submitted by MES and Riptide.  AR Tab 18 at 1298.  Because the evaluation ratings for these two proposals were very similar for the three non-price factors, the Marine Corps properly determined that price became increasingly more important to determine the overall best value to the government. *See* AR Tab 1 at 56.

There is no dispute in this matter that MES's proposed price of $3,191,228 was higher that Riptide's proposed price of $2,818,414.  AR Tab 18 at 1299.  And so, the agency's best value determination that Riptide offered the lowest total evaluated price is fully consistent with the terms of the RFP, which provides that "[t]he [RFP's] non-price factors, when combined, are significantly more important than price," but "as non-price factors qualitative distinctions become closer, price increases in importance."  AR Tab 1 at 56.  Given this, the Court will not set aside the agency's sound determination.  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004).

**E.      MES Has Not Shown That It Is Entitled To Injunctive Relief**

As a final matter, MES has not demonstrated that it is entitled to the injunctive relief that it seeks in this matter.  As discussed above, MES has not prevailed upon the merits of any of its claims challenging the Marine Corps' evaluation process for the SAVT Contract.  It is well-established that a plaintiff that has not actually succeeded upon the merits of its claims cannot prevail upon a request for injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68

Fed. Cl. 167, 176 (2005).  And so, the Court must **DENY** MES's request for injunctive relief in this matter.

## V.    CONCLUSION

In sum, MES has not shown that any of its claims regarding the Marine Corps' evaluation process for the SAVT Contract are supported by the administrative record.  Rather, the record evidence shows that the Marine Corps reasonably evaluated Riptide's proposal for this contract, that the Marine Corps treated all responsive offerors equally with respect to the schedule for completing performance, and that the Marine Corps made a sound best value determination to award the SAVT Contract to Riptide.  While MES may understandably disagree with the Marine Corps' decision to award the SAVT Contract to Riptide, it simply has not shown that the agency's evaluation process and award decision were irrational or contrary to the terms of the RFP.  MES has shown, however, that it is appropriate to supplement the court record with the Declaration of Naren Shahani.

And so, for the foregoing reasons, the Court:

1.  **GRANTS** MES's motion to supplement the court record;

2.  **DENIES** MES's motion for judgment upon the administrative record;

3.  **GRANTS** the government's and Riptide's cross-motions for judgment upon the administrative record; and

4.  **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on July 23, 2018.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that

they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **January 3, 2019**.

      **IT IS SO ORDERED.**


                          s/ Lydia Kay Griggsby
                          LYDIA KAY GRIGGSBY
                          Judge